## A CARGO OF MALT.

(*District Court, S. D. New York.*   November 10, 1881.)

1. ORAL CONTRACT—CHANGE IN—NOTICE TO BE GIVEN.

> Where an oral contract was entered into by the libellant, who agreed to take on his canal-boat a cargo of malt, and hold and transport the same at the rate of five dollars per day for 30 days, and if at the end of 30 days the cargo was still on board, from that time the libellant should be paid the "going rates" until the cargo was removed, it was *held* that the latter stipulation was an essential part of the contract, and that the owner of the cargo was entitled to specific notice of a change in the contract at the expiration of that time, and to be required to remove the cargo or pay the new rates.

In Admiralty.

*E. D. McCarthy* and *Mr. Elliot,* for libellant.

*Carpenter & Mosher,* for respondents.

BROWN, D. J.   This libel was filed to recover a balance alleged to be due for taking on board, holding, and transporting a cargo of malt upon a canal-boat of the libellant.

The oral contract, under which the cargo was taken on board, was made by the libellant with Mr. Ramsay, the agent of the claimant.   Both substantially agree as to the terms of the contract, which were that the libellant would take the cargo aboard his boat, and allow the claimant the use of her, for which the libellant was to be paid at the rate of five dollars per day for the first 30 days, which period of use Mr. Ramsay guarantied; and if, at the end of 30 days, the cargo was still on board, that from that time the libellant should be paid the "going rates" until the cargo was removed.

Under this contract the cargo was taken aboard at Newark on October 10, 1879.   At the end of 30 days, on November 10th, the libellant called at the office of the claimant, received $150 for the 30 days, and then told Mr. Ramsay that "they were now paying $10 per day, and that he wanted that for the further use of his boat;" to which Mr. Ramsay replied, "If that is the going rate, you will get it."   The libellant also testified that about a week afterwards he called at the office of the claimant, Mr. Gray, and told him, substantially, the same, to which, he says, Mr. Gray did not reply.   Mr. Gray testified that he had no recollection of any such interview, and that at the time stated he was not in New York, but in Buffalo.   The cargo was ordered and taken to Brooklyn in December, where it was discharged from the ninth to twelfth of that month.   The libellant claimed $10 per day after November 10th, and payment at that rate being refused, he filed this libel on the tenth of December, 1879.

It was proved that by "going rates" is meant the rates as established and paid by the three railroad companies most largely engaged in the lighterage of grain, viz., the Pennsylvania, the New York Central, and the Erie Railroad companies; and these companies were mentioned and referred to in the origi-

nal contract. The representatives of these companies fix the rates from time to time according to the supply and demand for boats of the ordinary size carrying from 8,000 to 8,500 bushels. By these rates there would have been owing to the libellant $47, or a little less, and that amount was tendered to him before his libel was filed. The representative of the Erie Railroad Company testified that when boats were scarce a higher price was allowed for boats carrying 10,000 bushels or over, but otherwise no distinction was made for extra size; and that from November 8th to 11th he paid $10 for such boats. The other companies had not paid for any boats higher than from $3 to $8 during the whole period, but whether they actually had larger boats at the time does not appear.

The libellant's boat was, as I must find, upon the testimony, of extra size, for which he is entitled to $10 for November 10th and 11th, which will entitle him to $51, instead of the $47 tendered. The libellant's claim to the benefit of a new contract at the absolute rate of $10 per day after November 10th cannot be sustained. The original contract was an entire contract. It embraced three principal points: *First,* the rate of five dollars per day for 30 days; *second,* the guaranty by the claimant of 30 days' pay, whether the cargo was unloaded before that time or not; *third,* the privilege to the claimant after 30 days, in case the malt was still aboard, to continue the use of the boat at the "going rates" of the three companies named. The privilege for the use of the boat after 30 days at "going rates" is as clearly embraced in the original contract as the guaranty of 30 days' pay whether used the whole time or not. There is nothing unreasonable, unfair, or improbable in such an agreement. Having a guaranty of 30 days at a fixed price, there is certainly nothing unreasonable in the libellant agreeing to receive the current rates thereafter; and it would be unreasonable to subject the cargo to the alternative of an immediate transfer after 30 days, or to the payment of arbitrary and excessive rates, unless the contract plainly gave to the libellant that right. The original contract in this case does not do so, and to allow the libellant, at the moment the 30 days expired, to fix an arbitrary price for any continued use of his boat, would be equivalent to disregarding altogether the express stipulation for the further use of the boat at "going rates." The stipulation being an essential part of the original contract, the libellant had no legal right to vary it.

Nor was the notice given by the libellant on November 10th of the character required to change the contract, if he had had a right to change it. The language of this notice imported no more than that $10 was the "going rates," and that the libellant would accordingly

expect that rate of payment. That was no more than directing attention to the original contract,—an act of caution on the part of the libellant, as the rates were then much higher than $5 per day. Mr. Ramsay's answer was but a renewed assent to the original contract. Had the libellant intended to reject the old contract or to impose a new one at higher rates, or had he any right to require the removal of the cargo unless some new terms of payment were agreed on, he was bound to give intelligible notice of such an intention, and plainly to require removal of the cargo or payment of new rates. He gave no such notice and expressed no such intention. The original contract, therefore, remained, and he can recover according to the terms of the original contract only.

Although I have allowed a sum slightly above the amount tendered, in consequence of the extra size of the libellant's boat, the libellant is not, I think, entitled to recover costs, because he did not, at the time of demanding payment, make any claim upon that ground, and because, having gone with Mr. Ramsay to the representative of the Pennsylvania Railroad Company and heard the "going rates" paid by that company for the period, he refused to go to the office of the Erie Railroad Company, where alone the extra rate had been paid, and where alone that fact would have been ascertained. He claimed $10 per day for the whole period as upon a new contract, to which he was not entitled and which is here disallowed.

Decree for $51, and interest from December 6, 1879, without costs.